UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
GLADYS MUHAMMAD, a/k/a
GLADYS WILSON,

                   Plaintiff,                     **MEMORANDUM and ORDER**

     -against-                              04-CV-2294 (SLT)

NEW YORK CITY TRANSIT AUTHORITY,

                   Defendant.
-----------------------------------------------------------x
**TOWNES, United States District Judge:**

      Plaintiff, an African-American, Muslim woman who is currently employed as a bus

driver, brings this employment discrimination action against her employer, defendant New York

City Transit Authority (the "NYCTA" or "TA"), alleging gender, religious and racial

discrimination. Defendant now moves pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss four of the

eleven causes of action raised in plaintiff's Amended Complaint. For the reasons stated below,

this motion to dismiss is granted in part and denied in part.

## BACKGROUND

      The following facts are set forth in plaintiff's Amended Complaint ("Am. Complt."), the

allegations of which are assumed to be true for purposes of this motion. Plaintiff, who at all

times relevant to this action has been a practicing Muslim, was hired by the TA as a bus driver in

November 2001 (Am. Complt. ¶¶ 6, 8). From the very start of her employment with the TA,

plaintiff has worn a "khimar," a head covering required by her religion. *Id.* at ¶¶ 5, 10. She

wore the khimar during her training and alleges, based on information and belief, that she was

told religious headgear was permissible by "an MTA training officer." *Id.* at 12-13.

      Plaintiff operated a bus out of the East New York depot without incident until July 2002,

when a dispatcher directed her to wear a TA-issued baseball cap over her khimar. Although

plaintiff retrieved a cap and brought it with her on her run, she never actually wore the cap while operating her bus. *Id.* at ¶¶ 16-17. The next day, plaintiff was approached by the General Manager of the East New York Depot and was told to either remove the khimar or wear the cap over it. *Id.* at ¶ 18. When plaintiff replied that the khimar was religious headgear, the General Manager told plaintiff that he would "get back to her" and permitted her to continue operating her bus. *Id.* at ¶¶ 19-20.

In late July or early August 2002, plaintiff met with the General Manager, a union representative, and an "as yet unknown high ranking MTA manager." *Id.* at ¶ 21. Although the managers were unaware of any policy which prohibited plaintiff from wearing her khimar, plaintiff was told that a specially fitted baseball cap would be made for her. That cap, however, was apparently never produced, and plaintiff – who completed her probationary period in November 2002 and transferred to the 126th Street Depot in Manhattan in January 2003 – continued to operate her bus without incident until November 2003.

In November 2003, General Superintendent Cordell Rogers told plaintiff to remove her khimar or to wear a baseball cap while operating a bus in passenger service. *Id.* at ¶ 27. When plaintiff refused, she was at first assigned to clean bus windows at the depot, then dropped from the payroll. *Id.* at ¶¶ 28, 31-33. After plaintiff contacted her union, she was permitted to return to work full time in mid-December 2003, initially washing windows and subsequently working a "shifting trick." *Id.* at ¶¶ 34, 38-39. The Amended Complaint states that, as of June 21, 2004, plaintiff had been working the "shifting trick" – in which she transports buses without passengers and has Saturdays and Sundays as her regular days off ("RDO's") – continuously since January 5, 2004. *Id.* at ¶¶ 39-40.

Although the "shifting trick" is apparently a desirable assignment, plaintiff alleges that she did not request this assignment and that it has disadvantages. She has no contact with riders, is ineligible for overtime, and cannot "pick" her RDO's like other TA employees. *Id.* at ¶¶ 44-46. She also claims that because fellow employees resent the fact that she has weekends off despite her low seniority, she has become "an object of scorn and ridicule from more experienced employees" and "has had to endure a daily barrage of taunts and threatening behavior from her male co-workers who are angry that [she] was given . . . the most coveted RDO's." *Id.* at ¶¶ 42-43.

After being assigned to the "shifting trick," plaintiff filed "grievances . . . with the U.S. Equal Employment Opportunity Commission" ("EEOC"). *Id.* at ¶ 50. Although plaintiff does not attach a copy of the charges she filed with the EEOC or specifically describe them in her Amended Complaint, she does attach a copy of her "right to sue" letter, dated March 4, 2004, in which the EEOC informed plaintiff that it was unable to conclude that the TA had violated any "statutes." *Id.* at ¶ 51 and Ex. E. On June 3, 2004, plaintiff initiated this action.

In her Amended Complaint, plaintiff sets forth eleven causes of action. Four of the eleven are at issue here: the seventh cause of action ("Claim Seven"), which advances a Title VII Hostile Work Environment Claim; the eighth cause of action ("Claim Eight"), which alleges race discrimination under Title VII; the tenth cause of action ("Claim Ten"), which alleges a violation of New York City Administrative Law § 8-107(1); and the eleventh cause of action ("Claim Eleven"), which seeks to recover damages for a violation of Article I, section 3, of the New York State Constitution.

Defendant now moves to dismiss these four claims. First, defendant argues that plaintiff has not stated a hostile work environment claim because her co-workers' hostility is not based on

race, gender or religion, but is due to the perception that plaintiff has been accorded favorable treatment.  Second, defendant argues that plaintiff did not allege race discrimination in her EEOC charge, and therefore cannot raise a Title VII race discrimination claim.  Third, defendant asserts that plaintiff's claims under the New York City Administrative Code must be dismissed because New York Public Authorities Law ("PAL") § 1266(8) specifically exempts the TA from liability under the New York City Administrative Code.  Finally, defendant argues that Claim Eleven must be dismissed because Article I, section 3, of the State Constitution does not support a private right of action.  These four arguments, and plaintiff's responses thereto, are discussed in more detail below.

## DISCUSSION

A.  The Standard for Dismissal Pursuant to Fed. R. Civ. Pro. 12 (b)(6)

In considering a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must accept all of the factual allegations in the complaint as true and must draw all reasonable inferences in the plaintiff's favor.  *See, e.g.*, *Board of Educ. of Pawling Cent. Sch. Dist. v. Schutz*, 290 F.3d 476, 479 (2d Cir. 2002), *cert. denied*, 537 U.S. 1227 (2003); *Jaghory v. New York State Dept. of Educ.*, 131 F.3d 326, 329 (2d Cir. 1997).  Defendant bears the burden of proof, *Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 128 (2d Cir.), *cert. denied*, 540 U.S. 1012 (2003), and a court "may not dismiss a complaint unless 'it appears beyond doubt, even when the complaint is liberally construed, that the plaintiff can prove no set of facts which would entitle him to relief.'"  *Jaghory*, 131 F.3d at 329 (quoting *Hoover v. Ronwin*, 466 U.S. 558, 587 (1984) (Stevens, J., disssenting)).

"Because a Rule 12(b)(6) motion challenges the facts alleged on the face of the complaint . . . or, more accurately, the sufficiency of the statements in the complaint," *see Cortec Indus.,*

*Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991), *cert. denied sub nom. Cortec Indus.,*

*Inc. v. Westinghouse Credit Corp.*, 503 U.S. 960 (1992), only certain matters outside of the four

corners of plaintiff's pleading may be considered. As the Second Circuit has stated:

> When determining the sufficiency of plaintiffs' claim for Rule
> 12(b)(6) purposes, consideration is limited to the factual
> allegations in plaintiffs' amended complaint . . ., to documents
> attached to the complaint as an exhibit or incorporated in it by
> reference, to matters of which judicial notice may be taken, or to
> documents either in plaintiffs' possession or of which plaintiffs
> had knowledge and relied on in bringing suit.

*Brass v. American Film Technologies, Inc.*, 987 F.2d 142, 150 (2d Cir. 1993) (citing *Cortec*, 949

F.2d at 47-48). If material other than that listed by the *Brass* Court is "presented to and not

excluded by the court, the motion shall be treated as one for summary judgment and disposed of

as provided in [Federal Rule of Civil Procedure] 56, and all parties shall be given reasonable

opportunity to present all material made pertinent to such a motion . . . ." *Faulkner v. Beer*, ___

F.3d ___, 2006 WL 2588014, at *2 (2d Cir. Sept. 8, 2006) (quoting Fed.R.Civ. P. 12(b)).

### B. Claim Seven: The Title VII Hostile Work Environment Claim

Defendant's first argument seeks to dismiss Claim Seven on the ground that plaintiff has

not alleged that she was subjected to hostility because of her religion, gender, race or

membership in a protected class. Defendant asserts that Claim Seven implies that plaintiff's co-

workers' hostility stemmed from the fact that she "was given regular days off that should have

gone to more senior employees," Am. Complt. at ¶ 106, and not because of her religion, sex or

race. *See* Memorandum in Support of Defendant's Motion to Dismiss ("Defendant's Memo") at

2. In response, plaintiff does not assert that the hostility itself stems from any of these protected

characteristics, but states that the "insults and taunts . . . are a direct result of the NYCTA's

decision to discriminate against African-American Muslim women and treat them differently from their other employees." Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss ("Pl. Memo") at 5.

Title VII of the Civil Rights Act of 1964 prohibits an employer from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin . . . ." 42 U.S.C. § 2000e-2(a)(1). The term "hostile work environment" does not appear in the text of Title VII; rather, it has been created by courts "to distinguish between cases involving a threat which is carried out" – *i.e.*, cases of "quid pro quo" harassment – and cases involving "offensive conduct in general." *Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 603 (2d Cir. 2006) (internal quotations omitted). Cases in the latter category, which includes cases in which threats are not carried out or are absent altogether, are called "hostile work environment" cases and require a showing of conduct so "severe or pervasive" as to alter plaintiff's conditions of employment. *See Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 751 (1998).

"[I]t is 'axiomatic' that in order to establish a . . . hostile work environment under Title VII, a plaintiff must demonstrate that the conduct occurred because of her sex" or another protected characteristic. *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002) (quoting *Brown v. Hernandez*, 257 F.3d 246, 252 (2d Cir. 2001)). After all, "Title VII does not prohibit all verbal or physical harassment in the workplace; it is directed only at '*discriminat*[*ion*] . . . because of . . . sex" or other protected characteristics. *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 80 (1998). Thus, "[i]n order to state a hostile work environment claim pursuant to Title VII, plaintiff must allege that [she] is a member of a protected class and that [she] 'was subjected to the hostility because of . . . membership in a protected class.'" *Santucci v. Veneman*, No. 01

Civ. 6644 (CBM), 2002 WL 31255115, at *5 (S.D.N.Y. Oct. 8, 2002) (quoting *Brennan v.*
*Metropolitan Opera Co.*, 192 F.3d 310, 318 (2d Cir. 1999)).

In her Amended Complaint in this case, plaintiff does not allege that her co-workers'
hostility was caused by her sex or race or religion. Rather, plaintiff implies that her co-workers'
hostility stemmed from jealousy and resentment over the fact that she "was given regular days
off that should have gone to more senior employees." Am. Complt. at ¶ 106. This hostility may,
as plaintiff suggests, be a consequence of plaintiff's disparate treatment, which can be remedied
– along with plaintiff's alleged loss of overtime opportunities and inability to pick her RDO's –
under plaintiff's fifth cause of action (alleging "Disparate Treatment under Title VII").
However, such hostility cannot form the basis of a separate hostile work environment claim
under Title VII. *See Brennan*, 192 F.3d at 318; *Santucci*, 2002 WL 31255115, at *5.
Accordingly, Claim Seven is dismissed.

## C. Claim Eight: The Title VII Race Discrimination Claim

Defendant's second argument is that Claim Eight should be dismissed on the ground that
race discrimination was not alleged in the charge plaintiff filed with the EEOC prior to bringing
this case. In response, plaintiff admits that she did not allege race discrimination in her EEOC
charge, but only because she did not learn of the race discrimination until approximately one
week after filing the complaint in this action. Pl. Memo at 6. Plaintiff alleges that, on June 7,
2004, she read a newspaper article reporting that Keith Harrington – a Caucasian, Sikh
motorman – had been prevented by the TA from operating subway trains while wearing a turban.
*Id.* at 6-7. Two days later, she read a follow-up article reporting that Harrington had been
permitted to return to passenger service. *Id.* at 7. Believing that "the acts of the NYCTA
regarding Keith Harrington qualify as new incidents of discrimination carried out in the same

manner alleged in the previously filed EEOC complaint," *id.* at 6, plaintiff filed her Amended Complaint on June 21, 2004, adding allegations concerning Harrington's treatment and adding the instant race discrimination claim.

As a preliminary matter, this Court notes that the instant argument is based on the EEOC charge, which was not attached to the Amended Complaint and is therefore outside the four corners of plaintiff's pleading. However, the Amended Complaint alleges that plaintiff filed "grievances" with the EEOC and that the EEOC issued a right-to-sue letter. Am. Complt. at ¶¶ 50-51. Courts in this Circuit have repeatedly held that when EEOC charges are expressly referred to in the pleading, they may be considered incorporated by reference. *See*, *e.g.*, *Gregory v. Daly*, 243 F.3d 687, 691 (2d Cir. 2001) (treating the plaintiff's allegations in the affidavit she submitted to the EEOC as an "integral part of her pleadings"); *James v. Federal Reserve Bank of New York*, No. 01-CV-1106 (RJD), 2005 WL 1889859, at *1, n. 2 (E.D.N.Y. Aug. 8, 2005) (considering EEOC charges which were expressly referred to in the amended complaint to be incorporated by reference). Moreover, plaintiff's EEOC charge and the agency's determination are both public records, of which this Court may take judicial notice. *See Moll v. Telesector Resources Group, Inc.*, No. 04-CV-0805S, 2005 WL 2405999, at *4 (W.D.N.Y. Sept. 29, 2005) (citing cases). Accordingly, this Court will consider the EEOC charges without converting this argument into a motion for summary judgment.

A timely complaint with the EEOC is, as both parties acknowledge, a precondition to filing a Title VII claim in federal court. *See*, *e.g*., *Deravin v. Kerik*, 335 F.3d 195, 200 (2d Cir. 2003); *Legnani v. Alitalia Linee Aeree Italiane, S.P.A.*, 274 F.3d 683, 686 (2d Cir. 2001). Although the exhaustion of administrative remedies through filing with the EEOC is not a jurisdictional requirement, "it remains . . . an essential element of Title VII's statutory scheme,

. . . and one with which defendants are entitled to insist that plaintiffs comply." *Francis v. City of New York*, 235 F.3d 763, 768 (2d Cir. 2000) (internal quotations and citations omitted). The purpose of this exhaustion requirement is "to encourage settlement of discrimination disputes through conciliation and voluntary compliance." *Butts v. City of New York Dep't of Hous. & Dev.*, 990 F.2d 1397, 1401 (2d Cir. 1993), *superceded by statute on other grounds as stated in Hawkins v. 1115 Legal Serv. Care*, 163 F.3d 684 (2d Cir. 1998). Since this purpose "would be defeated if a complainant could litigate a claim not previously presented to and investigated by the EEOC," *id.*, "the plaintiff must have raised in the administrative filing all claims she alleges in the complaint in federal court." *Estefania v. LaMarco*, No. CV-03-3305 (SJF), 2005 WL 990695, at *8 (E.D.N.Y. Apr. 18, 2005).

The Second Circuit has repeatedly recognized that "claims that were not asserted before the EEOC may be pursued in a subsequent federal court action if they are 'reasonably related' to those that were filed with the agency." *Legnani, S.P.A.*, 274 F.3d at 686 (quoting *Shah v. New York State Dep't of Civil Serv.*, 168 F.3d 610, 614 (2d Cir. 1999)). There are three situations in which claims not alleged in an EEOC charge are "reasonably related" to the allegations in the charge: where the claims (1) fall "within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination," (2) allege "retaliation by an employer against an employee for filing an EEOC charge," or (3) allege "further incidents of discrimination carried out in precisely the same manner alleged in the EEOC charge." *Butts*, 990 F.2d at 1402-03 (internal quotations omitted). "In determining whether claims are reasonably related, the focus should be on the factual allegations made in the [EEOC] charge itself, describing the discriminatory conduct about which a plaintiff is grieving." *Deravin*, 335 F.3d at 201 (internal quotations omitted; bracketed material in original).

The factual allegations in the EEOC charge in this case make no reference whatsoever to race. The EEOC charge expressly states that plaintiff "is of the Islamic faith," and is being "harassed for wearing a khimar while driving NYCTA busses." *See* EEOC Charge, attached as Ex. 2 to the Declaration of Richard Schoolman, dated Jan. 28, 2005. The charge also states that plaintiff has been told to remove or cover her khimar, "threatened with the denial of bus routes, [and] ridiculed with regards to her hair," *id.*, thus implying that plaintiff is suffering from religious discrimination. In addition, the charge implies sex discrimination, stating that "[m]ale Muslim bus operators are permitted to drive NYCTA busses while wearing religious headress." *Id.* However, the charge does not mention plaintiff's race, or imply discrimination based on race. Indeed, in that portion of the EEOC form which requests that the complainant check boxes to indicate the cause of the discrimination alleged, plaintiff checked only the boxes labeled "sex," "religion" and "retaliation." *Id.* The boxes labeled "race" and "color" were not marked.

In her response to defendant's motion, plaintiff tacitly admits that her EEOC charge did not allege race discrimination by arguing only that the race claims are "reasonably related" to her sex and religion claims. Pl. Memo at 6. However, "[c]ourts in the Second Circuit have generally held that claims alleging discrimination based upon a protected classification which are different than the protected classification asserted in administrative filings are *not* reasonably related." *Culbertson v. Charosa Found. Corp.*, No. 03-CV-3742 (SJF), 2004 WL 2370686, at *3 (E.D.N.Y. Oct. 18, 2004) (emphasis added). Indeed, there are several cases in this district alone which hold that a claim of race discrimination is not "reasonably related" to a claim of gender discrimination. *See, e.g.*, *Culbertson*, 2004 WL 2370686, at *3 (claims of age, racial and religious discrimination not "reasonably related" to the gender discrimination alleged in the administrative complaint); *O'Neal v. State Univ. of New York,* No. CV-01-7802 (DGT), 2003

WL 1524664, at *3 (E.D.N.Y. Mar. 24, 2003) (Title VII race discrimination claim not

"reasonably related" to the gender discrimination claim raised in the administrative complaint);

*Grillo v. New York City Transit Auth.*, 122 F. Supp. 2d 385, 391 (E.D.N.Y. 2000) ("gender

discrimination claims are not 'reasonably related' to discrimination claims based on race or

national religion"), *aff'd*, 291 F.3d 231 (2d Cir. 2002); *Murray v. Brooklyn Pub. Library*, No. 96-

CV-2786 (JG), 1997 WL 1048899, at *3 (E.D.N.Y. June 13, 1997) (dismissing a gender

discrimination charge where administrative complaint only alleged discrimination on the basis of

race and age).

Although courts have held that claims of race discrimination can be "reasonably related"

to a claim of discrimination on the basis of national origin, *see Sharabura v. Taylor*, No. 03 CV

1866 (JG), 2003 WL 22170601, at *3 (E.D.N.Y. Sept. 16, 2003), this Court is unaware of any

cases which have held a claim of race discrimination to be "reasonably related" to a claim of

religious discrimination.  Accordingly, this Court holds that Claim Eight, alleging race

discrimination under Title VII, is not "reasonably related" to the gender and religious

discrimination claims set forth in plaintiff's EEOC Charge.  Claim Eight is, therefore,

dismissed.[1]

D.  Claim Ten: Employment Discrimination under New York City Administrative Law § 8-107

Next, defendants argue that Claim Ten, alleging the violation of provisions of the New

York City Administrative Law, must be dismissed because a 2000 amendment to New York

---

[1]Although Defendant's Memo suggests that plaintiff may have attempted to amend her
EEOC charge sometime after learning Keith Harrington had been restored to passenger
service, plaintiff alleges that her "decision . . . to file an amended EEOC complaint is of no
moment."  Pl. Memo at 7.  Accordingly, this Court need not address the issue – raised in
Defendant's Memo at 6-7 – of whether a plaintiff can exhaust her administrative remedies
through filing an amended EEOC charge after a discrimination action has been commenced in
district court.

Public Authorities Law ("PAL") § 1266(8) specifically exempts the TA from liability under the

New York City Administrative Code.  This argument appears to be based on defendant's

unsubstantiated assumption that the amendment was designed to overturn *Levy v. City*

*Commission on Human Rights*, 85 N.Y.2d 740, 628 N.Y.S.2d 245 (1995), which held that the

New York City Transit Authority is subject to the jurisdiction of the New York City Commission

on Human Rights.  Since this argument has previously been rejected by this Court and several

other courts in this Circuit, this Court will address the argument on its merits notwithstanding the

fact that plaintiff has not made any argument in opposition.  *See* Pl. Memo at 8.[2]

> Prior to being amended in 2000, PAL § 1266(8) provided,  in pertinent part:

>> [N]o municipality . . . shall have jurisdiction over any facilities of
>> the authority [*i.e.*, the Metropolitan Transportation Authority] or
>> any of its activities and operations.  The local laws, resolutions,
>> ordinances, rules and regulations of a municipality . . . , heretofore
>> or hereafter adopted, conflicting with this title or any rule or
>> regulation of the authority, shall not be applicable to the activities
>> or operations of the authority, or the facilities of the authority,
>> except such facilities that are devoted to purposes other than
>> transportation or transit services.

In 1995, the New York Court of Appeals decided *Levy*, a gender discrimination case in which a

former TA employee had been awarded relief by the New York City Commission on Human

---

[2]Defendant urges this Court to grant this motion pursuant to Rule 7.1 of the Local Rules
of the United States District Courts for the Southern and Eastern Districts of New York, which
requires that "all motions and all oppositions thereto shall be supported by a memorandum of
law."  Although Rule 7.1 provides that "[w]illful failure to comply with this rule may be deemed
sufficient cause . . . for the granting of a motion by default," this Court does not find plaintiff's
response to be a "willful" violation of the rule.  Rather, this Court construes plaintiff's response
– that she "relies on the Court's discretion with regard to this portion of defendant's motion" – as
a "tacit admission" or "implicit concession" that defendant's points have merit.  *See Broad v.
DKP Corp.*, No. 97 Civ. 2029 (LAP), 1998 WL 516113, at *3 (S.D.N.Y. Aug. 19, 1998), *aff'd*,
182 F.3d 898 (2d Cir. 1999); *Koehler v. Bank of Bermuda (New York) Ltd.*, No. 96 Civ. 7885
(JFK), 1998 WL 67652, at *8 (S.D.N.Y. Feb. 19, 1998).  Plaintiff's concession, however, does
not compel the granting of a motion to dismiss where, as here, defendant's argument is legally
insufficient to meet its burden.

Rights ("the Commission"). The sole issue in *Levy* was whether the TA was subject to the jurisdiction of the Commission. In answering that question in the affirmative, the Court expressly rejected the TA's argument that, because the TA "is an independent and autonomous public authority created by the Legislature," the Commission could "exercise jurisdiction over it only if the Legislature . . . expressly authorized such local regulation and control." *Levy*, 85 N.Y.2d at 744, 628 N.Y.S.2d at 247. The *Levy* Court noted that such public authorities are only "'independent and autonomous' to the extent that they should be free from requirements imposed on other State agencies that would interfere with the accomplishment of the public corporation's purpose." *Id.,* 85 N.Y.2d at 745, 628 N.Y.S.2d at 248. Noting that the TA's purpose was "to acquire and operate transit facilities," the Court found that compliance with prohibitions against employment discrimination would not interfere with the TA's function or purpose.

In addition, the *Levy* Court rejected "the contention that specific legislative authority is required for the Commission's oversight" of the TA. *Id.* The Court noted that the Administrative Code gave the Commission authority to investigate complaints that corporations had engaged in discrimination, and that the legislature had not stripped the Commission of that authority with respect to public authorities or public benefit corporations, such as the TA. The Court stated:

> The Legislature has expressly declined to restrict the scope of the City Commission's jurisdiction and authority (*see*, General Municipal Law § 239-s), and there is no provision in the Public Authorities Law which appears to preclude the City Commission's jurisdiction over the New York City Transit Authority (*compare*, *e.g.*, Public Authorities Law § 1307[7] [the Capital District Transportation Authority is not subject to the jurisdiction over local governments unless specifically provided]).

*Id.*

About five years after *Levy* was decided, the Legislature amended PAL § 1266(8) to state that the TA and its subsidiaries, like the Metropolitan Transportation Authority and its subsidiaries, were exempt from certain local laws. As amended, PAL § 1266(8) now reads, in pertinent part:

> [N]o municipality . . . shall have jurisdiction over any facilities of the authority and its subsidiaries, and New York city transit authority and its subsidiaries, or any of their activities and operations. The local laws, resolutions, ordinances, rules and regulations of a municipality or political subdivision, heretofore or hereafter adopted, conflicting with this title or any rule or regulation of the authority or its subsidiaries, or New York city transit authority and its subsidiaries, shall not be applicable to the activities or operations of the authority and its subsidiaries, and New York city transit authority, or the facilities of the authority and its subsidiaries, and New York city transit authority and its subsidiaries, except such facilities that are devoted to purposes other than transportation or transit services.

Defendant argues that this amendment prohibits local governments from exercising jurisdiction over the TA, much as PAL § 1307(7) prohibits local governments from exercising jurisdiction over the Capital District Transportation Authority. Defendant further asserts that, in light of this amendment, the New York Court of Appeals "would almost certainly conclude" that the TA is no longer subject to the discrimination provisions of the New York City Administrative Code. Defendant's Memo at 10.

This same argument has previously been rejected by this Court, *see Stamm v. New York City Transit Auth.*, No. 04-CV-2163 (SLT), 2006 WL 1027142 (E.D.N.Y. Feb 7, 2006), and by at least two other courts in this Circuit. In *Everson v. New York City Transit Auth.*, 216 F. Supp. 2d 71 (E.D.N.Y. 2002), Judge Glasser found "no reason to conclude that, despite the recent amendment to Section 1266(8), the New York Court of [A]ppeals would today decide that the NYCTA is exempt from the reach of the New York City Administrative Code." *Id.* at 81. Judge

Glasser found that "the upshot of the holding in *Levy* is that Section 1266(8) will only exempt the NYCTA from the reach of local laws which interfere with the accomplishment of the NYCTA's purpose." *Id.* at 80. Noting that "compliance with local human rights laws will not interfere with the NYCTA's purpose," *id.*, Judge Glasser concluded that the 2000 amendment to PAL §1266(8) would not alter the *Levy* Court's analysis.

Similarly, in *Bogdan v. New York City Transit Auth.*, No. 02 Civ. 9587 (GEL), 2005 WL 1161812 (S.D.N.Y. May 17, 2005), Judge Lynch expressly rejected the TA's argument that the 2000 amendment of PAL § 1266(8) had the effect of overruling *Levy*. Judge Lynch noted that, while the amended statute provided that "no municipality . . . shall have jurisdiction" over the TA, this blanket prohibition appeared to be qualified by a subsequent provision which provided "that only local laws that 'conflict[ed]' with the Public Authorities Law should be inapplicable, and then, only as to 'facilities . . . devoted to . . . transportation and transit services.'" *Id.* at *5. Applying basic principles of statutory analysis, Judge Lynch reasoned that "the Legislature did not intend to prohibit the application of all local laws to the TA, but only of such laws that interfered with the accomplishment of its transportation purposes." *Id.*

Judge Lynch also noted that his interpretation of § 1266(8) was supported by both federal and state court precedents. Judge Lynch cited not only to *Everson*, but also to *Wahlstrom v. Metro-North Commuter R.R. Co.*, 89 F. Supp. 2d 506, 527 n. 21 (S.D.N.Y. 2000), which expressly followed *Levy* in "holding that Metro-North is not exempt from the NYCHRL." In addition, Judge Lynch cited to two state court cases – *Huerta v. New York City Transit Auth.*, 290 A.D.2d 33, 735 N.Y.S.2d 5 (App. Div. 2003), and *Rios v. Metro. Transp. Auth.*, Index No. 13206/03, 2004 WL 309154 (N.Y. Sup. Ct., Dec. 22, 2004) – which held that the TA could be sued for violations of local law even after the amendment of § 1266(8). Judge Lynch noted that,

"[i]n sharp contrast, the TA cites no judicial authority holding that the May 2000 amendment to § 1266(8) exempts it from complying with the City's anti-discrimination law." *Bogdan*, 2005 WL 1161812, at *6.

In this case, unlike in *Bogdan*, defendant has cited to some cases. However, in the case on which defendant principally relies – *Robinson v. Metro-North Commuter R.R. Co.*, Nos. 94 Civ. 7374 (JSR), 95 Civ. 8594 (JSR), 1998 WL 17742 (S.D.N.Y. 1998) – the plaintiffs did not controvert the TA's assertion that § 1266(8) required the dismissal of those causes of action brought under the New York City Administrative Code. Although the *Robinson* Court stated that it did not "perceive any valid response" to this argument, *id.* at *10, it did not discuss *Levy* or otherwise indicate that it had fully analyzed the issue. As a result, at least one court in this Circuit has expressly declined to follow *Robinson*. *See Wahlstrom*, 89 F. Supp. 2d at 527 n. 21.

This Court is also unpersuaded by the argument that this Court should defer to decisions of the Commission which have held that the 2000 amendment to PAL § 1266(8) stripped it of jurisdiction over the TA. As noted in *Gaines v. New York State Div. of Hous. & Cmty. Renewal*, 90 N.Y.2d 545, 664 N.Y.S.2d 249 (1997) – the case on which defendant premises its argument – the New York Court of Appeals has "repeatedly held that the interpretation given to a regulation by the agency which promulgated it and is responsible for its administration is entitled to deference if that interpretation is not irrational or unreasonable." *Id.*, 90 N.Y.2d at 548-49, 664 N.Y.S.2d at 250. However, in ruling that it lacked jurisdiction, the Commission was not interpreting regulations which it promulgated, but the effect of the 2000 amendment to PAL § 1266(8). Nothing in *Gaines* implies that this Court, or any other court, should defer to the Commission in its interpretation of a State statute. Accordingly, defendant's motion to dismiss Claim Ten is denied.

<u>E.  Claim Eleven: Religious Discrimination under New York State Constitution Article I, § 3</u>

Defendant's fourth and final argument seeks to dismiss Claim Eleven on the ground that Article I, § 3, of the New York State Constitution does not support a private right of action.[3] Plaintiff has not responded to this argument, again stating only that she "relies on the Court's discretion," Pl. Memo at 8, and defendant again urges this Court to dismiss Claim Eleven pursuant to Local Rule 7.1.  For the reasons set forth above, *see* p. 12, n 2, this Court does not view plaintiff's response to be a "willful" violation of Rule 7.1, and will, therefore, reach the merits of this argument.

Defendant's argument relies primarily on a single paragraph in *Kalsi v. New York City Transit Auth.*, 62 F. Supp. 2d 745 (E.D.N.Y. 1998), *aff'd*, 189 F.3d 461 (2d Cir. 1999), which dismissed a claim brought under Article I, § 11, of the State Constitution.  The *Kalsi* court stated:

> The New York Court of Appeals has stated that Article I, § 11 of the New York State Constitution, which prohibits discrimination because of race, color, creed, or religion, "was not intended to create a duty without enabling legislation but only to state a general principle   . . . .   The Legislature subsequently implemented those guarantees by provisions of various statutes . . . ."  *Brown v. State,* 89 N.Y.2d 172, 652 N.Y.S.2d 223, 674 N.E.2d 1129 (1996).   Accordingly, there is no cause of action under the state constitution itself.

*Id.*,  62 F. Supp. 2d at 761.

---

[3]Article I, § 3, which protects freedom of worship and religious liberty, reads as follows:

> The free exercise and enjoyment of religious profession and worship, without discrimination or preference, shall forever be allowed in this state to all humankind;  and no person shall be rendered incompetent to be a witness on account of his or her opinions on matters of religious belief;  but the liberty of conscience hereby secured shall not be so construed as to excuse acts of licentiousness, or justify practices inconsistent with the peace or safety of this state.

*Kalsi*, however, misreads *Brown*. Although *Brown* initially observed that the second sentence of Article I, § 11,[4] "was not intended to create a duty without enabling legislation but only to state a general principle recognizing other provisions in the Constitution," *id.*, 89 N.Y.2d at 190, 652 N.Y.S.2d at 234, *Brown* ultimately "held that the plaintiff class *had* stated an implied cause of action for damages against the State for violations of the equal protection clause and search and seizure provisions of the New York State Constitution" – *i.e.*, Article I, §§ 11 and 12. *Singh v. City of New York*, 418 F. Supp. 2d 390, 405 (S.D.N.Y. 2005) (emphasis added).

*Brown* involved an unusual episode in which police, searching for an assailant who was described only as "a black male" and who was believed to have cut his hand during the alleged attack, sought to stop and question every non-Caucasian male in the vicinity of a university in Oneonta, New York. These stops, conducted without reasonable suspicion, quite clearly violated the men's rights under Article I, §§ 11 and 12, of the State Constitution. However, since no arrests were ever made, no evidence was ever suppressed as a result of these constitutional violations.

The men who had been unlawfully stopped and questioned subsequently sued in State court to collect damages for the violation of their State constitutional rights. The State Supreme Court dismissed the action, but the Court of Appeals reversed the lower court, holding that the plaintiffs had stated a claim "sound[ing] in constitutional tort." *Brown*, 89 N.Y.2d at 177, 652

---

[4]Article I, § 11, provides:

> No person shall be denied the equal protection of the laws of this state or any subdivision thereof. No person shall, because of race, color, creed or religion, be subjected to any discrimination in his civil rights by any other person or by any firm, corporation, or institution, or by the state or any agency or subdivision of the state.

N.Y.S.2d at 226. Although the Court of Appeals conceded that New York law "has no enabling

statute similar to those contained in the Federal civil rights statutes permitting damage actions

for the deprivation of constitutional rights," it held that the State Constitution implied a cause of

action. *Brown*, 89 N.Y.2d at 186, 652 N.Y.S.2d at 231. Engaging in an analysis "similar to that

used by the Supreme Court when it recognized causes of action based on the Federal

Constitution in *Bivens* [*v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S.

388 (1971)]," *id.*, the Court of Appeals recognized that the plaintiffs in *Brown*, like those in

*Bivens*, "effectively had no remedy available to them," unless the judicial branch implied a cause

of action from the State constitution. *See Singh*, 418 F. Supp. 2d at 405. Accordingly, the Court

of Appeals implied such a cause of action, noting that doing so was not only consistent with the

purposes of the Search and Seizure and Equal Protection Clauses embodied in Article I, §§ 11

and 12, but "necessary and appropriate to ensure the full realization of the rights they state."

*Brown*, 89 N.Y.2d at 189, 652 N.Y.S.2d at 233.

Although the Court of Appeals thus implied a cause of action to enable the *Brown*

plaintiffs to sue for violations of certain State constitutional rights, the Court of Appeals

subsequently characterized *Brown* as creating only a "narrow remedy." *Martinez v. City of

Schenectady*, 97 N.Y.2d 78, 83, 735 N.Y.S.2d 868, 871 (2001). The *Martinez* Court stated:

> The remedy recognized in *Brown* addresses two interests: the
> private interest that citizens harmed by constitutional violations
> have an avenue of redress, and the public interest that future
> violations be deterred. In *Brown* itself, neither declaratory nor
> injunctive relief was available to the plaintiffs, nor – without a
> prosecution – could there be suppression of illegally obtained
> evidence. For those plaintiffs it was damages or nothing. We
> made clear, however, that the tort remedy is not boundless.
> Claimants must establish grounds that entitle them to a damages
> remedy, in addition to proving that their constitutional rights have
> been violated.

In *Martinez*, the plaintiff failed to establish adequate grounds for recognizing a State constitutional tort claim. Martinez had been charged with criminal possession of a controlled substance in the first degree in connection with drugs seized pursuant to an improvidently issued search warrant. By the time she brought her State-court action, which included causes of action for violations of Article I, §§ 11 and 12 of the State Constitution, Martinez had already succeeded in having her drug conviction reversed and had brought an unsuccessful federal court action pursuant to 42 U.S.C. § 1983 for false arrest and malicious prosecution. Under these circumstances, the New York Court of Appeals held that recognition of a constitutional tort claim was "neither necessary to effectuate the purposes of the State constitutional protections plaintiff invokes, nor appropriate to ensure full realization of her rights." *Id.*, 97 N.Y.2d at 83, 735 N.Y.S.2d at 871. The *Martinez* Court stated:

> Without question, the cost to society of exclusion of evidence and consequent reversal of plaintiff's conviction notwithstanding proof of guilt beyond a reasonable doubt will serve the public interest of promoting greater care in seeking search warrants. Unlike in *Brown,* the deterrence objective can be satisfied here by exclusion of the constitutionally challenged evidence.
>
> Moreover, plaintiff fails to demonstrate how money damages are appropriate to ensure full realization of her asserted constitutional rights.

*Id.*, 97 N.Y.2d at 83-84, 735 N.Y.S.2d at 871-72.

In this case, defendant points out that plaintiff, unlike the plaintiffs in *Brown*, has at least one avenue for redressing the alleged religious discrimination. Defendant specifically notes that New York Human Rights Law, N.Y. Exec. Law §§ 296-97, "prohibits discrimination in employment based on religion, and expressly provides a private right of action for an employee allegedly discriminated against on the basis of his or her religion." Defendant's Memo at 13. Future, similar constitutional violations may be deterred if plaintiff successfully exploits that

avenue. Accordingly, recognition of a State constitutional tort is unnecessary in this case to afford plaintiff a remedy. *See Singh*, 418 F. Supp. 2d at 406 (employing a similar analysis in declining to imply a cause of action for violations of Article I, § 8); *Wahad v. Federal Bureau of Investigation*, 994 F. Supp. 237 (S.D.N.Y. 1998) (employing a similar analysis in declining to imply a cause of action for violations of Article I, § 6). Claim Eleven is, therefore, dismissed.

## CONCLUSION

For the reasons set forth above, defendant's motion pursuant to Fed. R. Civ. P. 12(b)(6) is granted to the extent of dismissing Claims Seven, Eight and Eleven of plaintiff's Amended Complaint. That portion of defendant's motion which seeks dismissal of Claim Ten is denied. Defendant shall file an answer to plaintiff's Amended Complaint within ten (10) days after notice of this Memorandum and Order. *See* Fed. R. Civ. P. 12(a)(4)(A).

**SO ORDERED.**

                                           /s/
                                      SANDRA L. TOWNES
                                      United States District Judge

Dated: Brooklyn, New York
       September 20, 2006